# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Estate of Colin Grau, a minor, by his Parents, Scott and Brenda Grau, and Scott Grau and Brenda Grau in their Own Right, | ) ) ) ) | Civil Action No. 10-111 |
| Plaintiffs, | ) ) ) | District Judge Cercone Magistrate Judge Lenihan |
| v. | ) ) | |
| New Kensington-Arnold School District, Robert Pallone, Robert Sauro, Carol Ansani, Beverly Meyer, Debbie Glushenko, Traci York, Patrick Petit, George Batterson, Wayne Perry, Eric Doutt, Audrey Sleigh, and Jon Banko and Jeffrey Thimons, all such individuals being sued in their individual and official capacitites, | ) ) ) ) ) ) ) ) ) | Re: Doc. No. 18 |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion to Dismiss at Doc. No. 18 be granted.

### II. FACTS

The above-captioned case involves a tragic vehicular accident involving minor Colin Grau, who was killed during his senior year at Valley High School, New Kensington-Arnold School District, while riding as a passenger on Route 366. Parents Scott and Brenda Grau bring this action on behalf of themselves and their minor son against the above-named Defendants

pursuant to 42 U.S.C. § 1983 alleging a Fourteenth Amendment substantive due process violation pursuant to the state created danger theory of liability. The following facts are taken from Plaintiffs' Complaint at Doc. No. 1 and are deemed true for purposes of the pending motion to dismiss.

Minor Plaintiff Colin Grau was enrolled as a senior at Valley High School (VHS) for the academic year 2008-2009. (Doc. No. 1 at ¶ 24.) VHS is located along Route 366, a four lane highway with no sidewalks or other accommodations for pedestrian traffic. (Doc. No. 1 at ¶ 25.) Plaintiffs aver that Route 366 is known by all named Defendants to be a dangerous highway. (Doc. No. 1 at ¶ 26.) Plaintiffs further aver that from 2004 through 2008, 88 vehicle collisions occurred on Route 366 near VHS. (Doc. No. 1 at ¶ 27.) At all times relevant to the Complaint, Defendant School District did not provide bus transportation to and from school for any VHS students. (Doc. No. 1 at ¶ 28.) Plaintiffs also aver that it was unsafe for students to walk to and from VHS due the fact that Route 366 was located immediately adjacent to it and no pedestrian sidewalk is available. (Doc. No. 1 at ¶ 29.) Consequently, students, including Minor Plaintiff, traveled to and from VHS with a parent, relative or third party. (Doc. No. 1 at ¶ 30.) At all times relevant to the Complaint, Plaintiff Mother arranged for her son's private transportation to and from VHS because she did not want him to ride in vehicles operated by inexperienced teenage drivers on Route 366. (Doc. No. 1 at ¶ 32.)

Plaintiffs further aver that at all relevant times, Defendant School District maintained a written policy that provided for a closed campus at its high school that imposed a penalty of suspension for students who left campus without authorization. (Doc. No. 1 at ¶ 35.) Pursuant to this written policy, students seeking to leave campus were required to request authorization

via Defendant Principal Jon Banko's office (Defendant Principal). (Doc. No. 1 at ¶ 36.) Students leaving VHS without proper authorization violated Defendant School District's written closed campus policy. (Doc. No. 1 at ¶ 37.)

Defendant School District also maintained a written student permit parking policy which provided for the loss of parking privileges in the event that any student transported another student "illegally" from school grounds. (Doc. No. 1 at ¶ 38.) Plaintiffs aver that "skipping school" using a vehicle with an issued parking permit, constituted a violation of Defendant School District's student permit parking policy. (Doc. No. 1 at 39.) Defendant School District, under the supervision of Defendant George Batterson, superintendent and school board member (Defendant Superintendent), Defendant Principal, and Defendant Jeffrey Thimons, vice principal (Defendant Vice Principal), issued parking permits to students having a driver's license and a car, and failed to screen student drivers for experience or skill before issuing a parking permit. (Doc. No. 1 at ¶ 40.) Plaintiffs aver that Defendant Principal and Defendant Vice Principal were aware that the students to whom it issued parking permits were inexperienced and unskilled drivers and that they posed a grave risk of danger to any passengers who traveled with them to and from VHS. (Doc. No. 1 at ¶ 41.)

Plaintiffs further aver that Defendant Principal and Defendant Vice Principal de-activated the system at VHS that monitored entry and exit at VHS using a bell/buzzer. (Doc. No. 1 at ¶ 42.) Further, Plaintiffs aver that these Defendants did not arrange for or implement surveillance of VHS's parking lot to determine whether its students were truant or skipping school. (Doc. No. 1 at ¶ 43.) Plaintiffs also aver that Defendant Principal and Defendant Vice Principal did not maintain security at the doors or parking lots of its high school via teachers or paraprofessional

3

employees in furtherance of Defendant School District's written closed campus policy. (Doc. No. 1 at ¶¶ 44, 45.) Finally, Plaintiffs aver that Defendant Principal and Defendant Vice Principal intentionally ignored/consciously decided not to enforce Defendant School District's closed campus policy, and parking permit policy, and that the refusal to enforce these policies was widely known to students, Defendant Superintendent, and the individual Defendant School Directors. (Doc. No. 1 at ¶¶ 47-50.) Therefore, students frequently exited the school and drove off of school grounds during the middle of the day or were passengers in vehicles driven by inexperienced and unskilled teenage drivers. (Doc. No. 1 at ¶¶ 49-50.) Plaintiffs conclude that Defendant Principal and Defendant Vice Principal consciously refused to enforce Defendant School District's closed campus and student permit parking policies, and that this refusal was undertaken by them with full knowledge of the danger posed by Route 366, and that teenage drivers are inexperienced, unskilled and unsafe drivers. (Doc. No. 1 at ¶ 51.)

Plaintiffs allege that Defendant Principal stated to Defendant Board members, VHS employees and VHS's Director of Security that "all we are worried about is the people who want to be in the building, not the people who want to leave the building. So if they want to leave the building, let them go." (Doc. No. 1 at ¶ 52.) Plaintiffs aver that this statement and VHS's defacto open campus policy are violations of Defendant School District's written policies and Pennsylvania truancy law. (Doc. No. 1 at ¶ 53.) Plaintiff Mother and Father further aver that had they known of the defacto open campus policy, they would have taken additional precautions to protect their son, including additional oversight of his daily comings and goings to VHS. (Doc. No. 1 at ¶ 58.) Plaintiff Mother and Father also allege that they relied on Defendants to enforce their policies to keep Minor Plaintiff safe from the dangers of being a

4

passenger with an inexperienced teenage driver. (Doc. No. 1 at ¶ 62.) They participated in a carpool with other parents to protect their children from the known perils of Route 366, and from being a passenger on Route 366 in a car driven by inexperienced and unsafe teenage drivers. (Doc. No. 1 at ¶ 67.)

On January 1, 2009, a fellow student at VHS acquired access to a vehicle to drive to and from school. He also acquired a parking permit issued by Defendant School District. On January 21, 2009, Plaintiff Mother learned of the fellow student's vehicle acquisition, and avers she did not have a reasonable opportunity to prevent Minor Plaintiff from riding with the other student via elevated parental oversight. (Doc. No. 1 at ¶¶ 64, 65, 68.) Plaintiff Mother and Father relied on the closed campus and student parking permit policies to prevent Minor Plaintiff from being a passenger in the other student's car during the school day. (Doc. No. 1 at ¶ 71.)

On January 21, 2009 at approximately 2:15 p.m., the other student and Minor Plaintiff left VHS through the front door. Minor Plaintiff did not have proper authorization to be in the other student's vehicle and neither had permission to leave VHS prior to the conclusion of the school day. (Doc. No. 1 at ¶¶ 73, 74, 75.) Minor Plaintiff and the other student traveled on Route 366. The other student lost control of the vehicle when it collided head-on with a pick-up truck. Minor Plaintiff was killed on impact. Plaintiff Mother intended to pick up Minor Plaintiff from school at the conclusion of the school day. (Doc. No. 1 at ¶¶ 81, 85-87, 89, 91.)

III. **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d

176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

Recently, in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. See id. at 1949-50; see also Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the Fowler court set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are

6

sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

In their Memorandum in Support of Motion to Dismiss, Defendants argue the following: 1) Plaintiffs' state-created danger claims must be dismissed because Plaintiffs have failed to set forth a claim upon which relief may be granted; 2) Plaintiffs' willful misconduct claim must be dismissed because any negligence or recklessness of the individual Defendants cannot serve as the basis for this claim; 3) Plaintiffs' loss of society and companionship claim must be dismissed because such damages are unavailable to parents.

Plaintiffs respond that 1) they have asserted valid state-created danger § 1983 claims; 2) they have asserted a valid willful misconduct claim; and 3) Plaintiffs withdraw their loss of society and companionship claim.

IV. **ANALYSIS**

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate

7

that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

### A.   STATE-CREATED DANGER

In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989), the United States Supreme Court noted that generally, the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not impose an affirmative duty upon the state to protect citizens from the acts of private persons. Id. at 198-200. In DeShaney, the United States Supreme Court rejected the claim of a boy and his mother that local officials, who had repeatedly attempted to ensure the boy's safety from his abusive father, were liable under the "special relationship" theory when the boy remained in his father's custody and was so badly beaten that the boy suffered severe brain damage. Id. at 195-96. In rejecting plaintiffs' claim pursuant to the "special relationship" theory, the Court stated that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." Id. at 199-200. The Court continued its analysis with the following dicta that provided the foundation for the "state-created danger" theory of liability:

> While the State may have been aware of the dangers Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any

8

> more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua.

Id. at 201. The United States Supreme Court emphasized that the substantive component of the Due Process Clause is "a limitation on the State's power to act, not . . . a guarantee of certain minimal levels of safety and security." Id. at 195. The DeShaney court continued that historically, the purpose of substantive due process "was to protect the people from the State, not to ensure that the State protected them from each other." Id. at 196.

In Kneipp, the United States Court of Appeals for the Third Circuit relied on the language in DeShaney to recognize that a plaintiff alleging a substantive due process violation pursuant to 42 U.S.C. § 1983 could proceed in accordance with a "state-created danger" theory where a state does play a part in the creation of the dangers faced by a private person, or where through its actions, the state renders the individual more vulnerable to them. Kneipp, 95 F.3d 1199, 1205, 1211 (3d Cir. 1996). In order to prevail on a state-created danger claim, a plaintiff must prove the following:

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Sanford v. Stiles, 456 F.3d 298, 304-05 (3d Cir. 2006) (quoting Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks and footnotes omitted)). A plaintiff's failure to satisfy any one of the above elements will defeat the state-created danger claim. See Morse v. Lower Merion School Dist., 132 F.3d 902, 914 (3d Cir. 1997).

Initially, the Court addresses a preliminary matter related to Defendants' first argument concerning state-created danger. Defendants argue that Plaintiffs' state-created danger claims must be dismissed because Minor Plaintiff was not in the care and custody of Defendant School District. (Brief in Support of Motion to Dismiss, Doc. No. 19 at 4.) Defendants confuse the third element of the state-created danger theory with an independent exception to the general rule that the Due Process Clause does not impose an affirmative duty on the state to protect individuals from harms caused by private citizens. See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 198-200 (1989). The United States Court of Appeals for the Third Circuit has recognized two exceptions to this general rule. The first exception, as discussed above, concerns the situation when a "state-created danger" is involved. The second exception where the state has a duty to protect or care for individuals from the acts of private citizens arises when a "special relationship" exists. The "special relationship" theory is a very limited one that requires a custodial relationship in the nature of incarceration or institutionalization. Torisky v. Schweiker, 446 F.3d 438, 444-45 (3d Cir. 2006). The United States Court of Appeals for the Third Circuit has repeatedly stated that no special relationship exists between school children and the state because parents decide where to send their children to school, children remain residents of their parents' home, and children are not physically restrained from leaving school

during the school day. Stanford v. Stiles, 456 F.3d 298, 304 n.4 (3d Cir. 2006) (discussing D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1371-73 (3d Cir. 1992) (holding that no special relationship exists between school children and the state)); Black v. Indiana Area School Dist., 985 F.2d 707, 713 (3d Cir. 1993). See also Bailey v. School Dist. of Philadelphia, No. 06-CV-4240, 2008 WL 343088 *2 (E.D. Pa., Feb. 7, 2008).

Instead, the third element of the state-created danger theory does not require a "special relationship" in the nature of incarceration or institutionalization as discussed above. See Kneipp, 95 F.3d at 1205. Instead, the Third Circuit Court of Appeals in Kneipp specifically noted that "[t]he relationship requirement under the state created danger theory contemplates some contact such that the plaintiff was a foreseeable victim of a defendant's acts in a tort sense." Id. at 1209 n.22. There is no custodial requirement attendant to a state-created danger claim. Id. Consequently, Defendants' first argument in support of their Motion to Dismiss must fail.

    1. The legal sufficiency of the Complaint as to whether the harm ultimately caused to Minor Plaintiff was foreseeable and fairly direct.

Plaintiffs' Complaint is legally insufficient in satisfying the first element of the state-created danger prima facie case. Plaintiffs allege that Defendants were aware that VHS is located immediately adjacent to a dangerous four-lane highway, and that a high number of accidents occur thereon. Plaintiffs further allege that in the absence of pedestrian access on the highway, and busing by the district, nearly all VHS students had to either drive to school, or ride with a parent, another student or a third party. Plaintiffs also state that Defendants were aware,

11

generally, that teenage drivers are unsafe, unskilled and inexperienced. Plaintiffs also aver that with the defacto open campus policy resulting from Defendants' failure to enforce the written provisions of the closed campus and parking permit policies, Defendants were aware that a large number of students were actually leaving school early, that they would have easy access to high-risk student transportation, and that they would necessarily travel the dangerous route. Plaintiffs argue that based on these averments, "Defendants were aware that the very harm suffered by Plaintiff was likely to result from their conduct as it related to the closed campus policy." (Plaintiffs' Responsive Brief in Opposition to Defendants' Motion to Dismiss, Doc. No. 23 at 11.)

Accepting Plaintiffs' well-pleaded facts as true, and disregarding all legal conclusions, the facts alleged in Plaintiffs' Complaint are insufficient to show that Plaintiffs have a "plausible claim for relief." Fowler, 578 F.3d at 210-11 (citing Iqbal, 129 S. Ct. at 1950). The facts alleged here fail to establish a sufficient nexus between the accident which took Minor Plaintiff's life, and the failure of the Defendants to enforce the closed campus and parking permit policies. The connection alleged here is speculative at best.

Instead, the first element of the state-created danger test is satisfied where a specific harm to a specific individual was foreseeable. Kneipp, 95 F.3d at 1208. In Kniepp, an intoxicated plaintiff and her husband were stopped by defendant police officers close to their home for causing a disturbance on the highway. Id. at 1201. The defendant police officers permitted the husband to continue home, but detained the plaintiff wife at the scene. Id. at 1202. The defendant police officers then left the obviously intoxicated plaintiff wife at the scene to make her own way home. Id. at 1203. The plaintiff was found hours later at the bottom of an

embankment with severe brain damage caused by hypothermia.  Id.  The United States Court of Appeals for the Third Circuit concluded that "the harm likely to befall [plaintiff] if separated from [her husband] while in a highly intoxicated state in cold weather was indeed foreseeable." Id. at 1208.

Here, Plaintiffs allegations are focused generally on the commonly known dangerous nature of Route 366, the generalization that all newly licensed drivers are unskilled, and the generalization that in the absence of policy enforcement, students were leaving school early. These generalized averments necessarily break the chain of foreseeability, and Minor Plaintiff's death cannot be characterized as a fairly direct consequence of Defendants' failure to enforce their closed campus and parking permit policies.  There are no allegations, nor can there be, that Defendants knew that Minor Plaintiff would leave school early, that he would ride with another student, and that student would lose control of his vehicle, causing a head-on collision resulting in Minor-Plaintiff's death.  Instead, Minor Plaintiff left school early on his own volition, and chose to ride as a passenger in the other student's car, rather than wait for his mother to pick him up at the end of the school day.  Consequently, Defendants' Motion to Dismiss on this issue should be granted.

> 2. <u>The legal sufficiency of the Complaint as to whether Defendants affirmatively used their authority in a way that created a danger to Minor Plaintiff or that rendered him more vulnerable to danger than had Defendants not acted at all.</u>

In Support of their Motion to Dismiss, Defendants also argue that Plaintiffs have failed to sufficiently allege that Defendants used their authority in a way that created a danger to Minor

Plaintiff, or that rendered him more vulnerable to danger had the Defendants not acted at all. (Doc. No. 19 at 12.) Defendants point out that "it is speculative to assume that the fatality would not have occurred but for District administrators allegedly failing to enforce District policies." (Doc. No. 19 at 12.) The United States Court of Appeals for the Third Circuit has indicated that the fourth element of the state-created danger test involves "whether the state actor used its authority to create an opportunity which otherwise would not have existed for the specific harm to occur." Morse v. Lower Merion School Dist., 132 F.3d 902, 914 (3d Cir. 1997). After discussing relevant case law and the fact that it is unclear whether an affirmative act is required, (and if so, what constitutes an affirmative act), the Morse court concluded the following: "[T]he dispositive factor appears to be whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable, and not whether the act was more appropriately characterized as an affirmative act or an omission." 132 F.3d at 915. Cf. Bright v. Westmoreland County, 443 F.3d 276, 283 n.7 (3d Cir. 2006) ("A use of authority that creates an opportunity for harm necessarily entails an affirmative act.").

The fourth element, therefore, also requires a direct causal relationship between the affirmative act of the state and the plaintiff's harm. Kaucher v. County of Bucks, 455 F.3d 418, 432 (3d Cir. 2006); Bright, 443 F.3d at 283 n.7. "Only then will the affirmative act render the plaintiff 'more vulnerable to danger than had the state not acted at all.'" Kaucher, 455 F.3d at 432 (quoting Bright, 443 F.3d at 281). Accordingly, the defendant's actions must be the "but for cause" of the danger confronting the plaintiff that otherwise would not have existed. Kaucher, 455 F.3d at 432.

Here, Defendants' failure to enforce its closed campus and parking permit policies is not

14

the "but for cause" of Minor Plaintiff's death. Plaintiff's death occurred because he chose to leave school early and ride with a friend who lost control of his vehicle. Defendants did not place him in this vehicle. Put another way, Defendants did not create the dangerous conditions that existed on Route 366, nor did they have any involvement with the other student's maneuvering of the vehicle. Plaintiffs submit that because Minor Plaintiff was an outstanding student, he would not have left school if the closed campus and parking permit policies were being enforced. (Doc. No. 23 at 18.) Again, Plaintiffs' assertions are speculative. All outstanding students at VHS arguably possessed the same motivations as Minor Plaintiff. Yet, it was Minor Plaintiff who chose to leave the school, ride as a passenger in the car with the other student, who then lost control of his vehicle resulting in Minor Plaintiff's death. Clearly, Defendants' failure to enforce their policies is not the "but for cause" of Minor Plaintiff's death.

In <u>Brozusky v. Hanover Twp.</u>, 222 F. Supp.2d 606, 615-16 (M.D. Pa. 2002), the United States District Court for the Middle District of Pennsylvania granted a motion to dismiss filed by the township and school district for, <u>inter alia,</u> plaintiffs' failure to sufficiently allege facts in support of the fourth element of the state-created danger test. In <u>Brozusky</u>, a 7-year-old student was struck by a pick-up truck when his grandfather dropped him off late to school following a dentist appointment. The grandfather dropped the child on the opposite side of the street from the school building. When the child exited the passenger side of the car, he proceeded in front of his grandfather's car, and was struck by the truck as it swerved around the grandfather's vehicle. Plaintiffs alleged that defendants were responsible for dangerous conditions that existed at the school, particularly when parents dropped off their children after the commencement of the school day. That is, once the school day had begun, the traffic control device was deactivated,

15

the crossing guard was off duty, there was no accessibility to the off-street parking area, and no alternate safety arrangements were in place to protect students arriving late. Id. at 607-09. In finding that the averments of the complaint failed to satisfy the fourth element of the state-created danger test, the court stated that the danger the child faced was being dropped off on the opposite side of the street from the school building. Id. at 615. The court continued that neither defendant required that the child be dropped off on the far side of the street, and that there appeared to be no reason why the grandfather could not have dropped him on the side of the street nearest to the school, where he would not have had to cross traffic. Id. The Brozusky court then noted that even if defendants had corrected all the alleged hazards outlined in the complaint, the same opportunities for harm would have remained: the negligent driving of the truck driver; the minor plaintiff's negligence; and the grandfather's negligence in dropping off the child on the far side of the street. Id.

Likewise, the danger faced by Minor Plaintiff here was the negligent driving of the other student. The Defendants did not require Minor Plaintiff to ride with the other student, nor did Defendants create the dangerous conditions on Route 366. And even if Defendants had vigilantly enforced their closed campus and parking permit policies, the same opportunities for harm would have remained: the hazardous nature of Route 366, and the negligent driving of the other student.

Recognition of liability under the allegations of the Complaint would, in effect, make Defendants the guarantors of the safety of all VHS students from all of the following: the dangerous nature of Route 366; all third persons using Route 366; and all VHS students possessing a drivers license, who according to the Complaint, are "inexperienced and unskillful

16

drivers . . . that [] pose[] a grave risk of danger to any passengers who travel[] with them to and from VHS." (Doc. No. 1 at ¶ 41.) The United States "Supreme Court has warned against expansions of liability under 42 U.S.C. § 1983 that 'would trivialize the centuries-old principle of due process of law.'"[1] Brozusky, 222 F. Supp.2d at 615-16 (quoting Daniels v. Williams, 474 U.S. 327, 332 (1986)). As noted by the court in Brozusky, "Plaintiffs may pursue claims under state tort law, but any shortcomings in that law cannot be remedied by converting garden variety tortious conduct into the denial of substantive due process." 222 F. Supp.2d at 616 (footnote omitted).[2]

Plaintiffs' factual averments fail to satisfy the fourth element of the state-created danger theory. Therefore, Defendants' Motion to Dismiss on this issue should be granted.

B. WILLFUL MISCONDUCT

Plaintiffs' claim for willful misconduct pursuant to 42 Pa. Cons. Stat. Ann. § 8550 must necessarily fail. As noted by the United States Court of Appeals for the Third Circuit:

---

[1]The Court sympathizes with the Plaintiffs' loss as well as their instinctive need to protect their child, and shares in the expectation that children will be protected from harm during the course of the school day. Plaintiffs' redress, however, does not lie in the Due Process Clause of the Fourteenth Amendment, but rather in the state courts or legislature.

[2]The Brozusky court also engaged in a thorough analysis of Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992), a substantive due process case. The Brozusky court noted that the second element of a state-created danger claim, conscience-shocking conduct, is a prerequisite for any substantive due process claim. 222 F. Supp.2d at 613. Relying on Collins, the Brozusky court noted that "allegations of failure to . . . guard against known risks, despite being labeled as 'deliberate indifference,' cannot 'be characterized as arbitrary, or conscience-shocking, in a constitutional sense.'" 222 F. Supp.2d at 612 (quoting Collins, 503 U.S. at 128). Neither the township nor the school district, noted the Brozusky court, "owed an obligation of constitutional dimension to assure the safety of students coming to the school by private vehicle." Id. at 612.

> [W]illful misconduct is a demanding level of fault. Willful misconduct has been defined by the Pennsylvania Supreme Court as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (1994) (citations omitted). Otherwise stated, "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" Id.

Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006). The Defendants' alleged conduct in this case cannot be characterized as intentional, so it cannot constitute willful misconduct for purposes of § 8550. Consequently, Defendants' Motion to Dismiss should be granted on this issue.

V. **CONCLUSION**

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss (Doc. No. 18) filed by Defendants be granted. Any attempt by Plaintiffs to amend their Complaint would be futile.[3]

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and FEDERAL RULE OF CIVIL PROCEDURE 72(b)(2), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date

---

[3] The Court of Appeals in Phillips v. County of Allegheny has ruled that if a district court is dismissing a claim pursuant to 12(b)(6) in a civil rights case, it must sua sponte "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir.2008).

of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: June 30, 2010

BY THE COURT:

_____
LISA PUPO LENIHAN
United States Magistrate Judge

All Counsel of Record
Via Electronic Mail